UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SANKONA GRAHAM,<br><br>           Plaintiff,<br>v.<br>STATE OF NEVADA, et al.,<br>           Defendants. | Case No. 2:24-cv-00790-ART-DJA<br><br>ORDER<br><br>(ECF Nos. 27, 38, 44). |

Plaintiff Sankona Graham has filed numerous motions for relief. The Court now addresses Graham's motion to reconsider parts of the screening order, for a preliminary injunction on an emergency basis, and to enforce a settlement or issue sanctions. (ECF Nos. 27, 38, 44). For the reasons discussed below, the Court denies each motion in its entirety.

**I.    DISCUSSION**

   **A.    Motion for Reconsideration (ECF No. 27)**

Reconsideration of a non-dispositive order may be appropriate if "the court has overlooked or misunderstood" any point of law or fact. Nev. LR 59-1(a). "Reconsideration also may be appropriate if (1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law." *Id.* But "[m]otions for reconsideration are disfavored" and cannot be used to "repeat arguments already presented" unless they are "necessary to explain controlling, intervening law or to argue new facts." *Id.* at (b). And a party who repeats arguments "will be subject to appropriate sanctions." *Id.*

Graham moves for reconsideration of the screening order, arguing that the Court erred when it declined to consider motions that he filed supporting the SAC

when screening that pleading; denied his motions for pretrial equitable relief; dismissed the NDOC and did not allow claims to proceed against certain Defendants; and dismissed his conspiracy, improperly joined, and disability-discrimination claims. The Court addresses each argument in turn.

### 1. Material outside the SAC

The Court did not err when it declined to consider motions that Graham filed supporting the SAC when it screened that pleading. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.* But the contents of Graham's motions do not satisfy either exception because they merely provide additional and regurgitated factual allegations that do not constitute adjudicative facts[1] and legal arguments about why the SAC complies with Federal Rules of Civil Procedure 1, 15, 19, 20. (*See, e.g.*, ECF Nos. 16, 17). Graham's request to reconsider disregarding materials outside the SAC is denied.

### 2. Motions for pretrial equitable relief

Graham argues that stating a colorable failure-to-protect claim about McCracklin and Nunez showing other inmates his grievances is enough to merit granting at least part of his injunctive-relief motion at ECF No. 18. The Court provided Graham the standards governing restraining orders and injunctions when it denied his first round of injunctive-relief motions. (ECF No. 10 at 10–12).

---

[1] Judicial notice under Federal Rule of Evidence 201 "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)).

2

Simply stating a colorable claim for relief is not enough to satisfy those standards. Graham's motion to reconsider denying his motions for equitable relief is denied.

### 3. Dismissing the NDOC

Graham argues that it isn't fair to dismiss the NDOC under Eleventh Amendment immunity because the department implements policies and operations affecting and governing its facilities and hires and trains prison employees. Fair or not, "the Supreme Court has expressly declined to extend *Monell*'s theory of municipal liability under § 1983 to state entities." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (citing *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 690 n.55, 691 (1978); and *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70–71 (1989)). And the Court has already explained why the SAC's allegations fall well short of stating an official-capacity claim for prospective injunctive relief under any theory of liability. (ECF No. 25 at 15–16). Graham's motion to reconsider dismissing the NDOC from this action is denied.

### 4. Not allowing claim to proceed against certain defendants

Graham argues that the Court erred when it did not allow his Eighth Amendment failure-to-protect claim to proceed against "administrators" Silber, Amicer, Bean, Julie Williams, Frank Dreesen, William Kuloloia, and Fowler and correction officers Lt. Day, Lt. Rivera, and Sgt. Quinn. Graham does not identify any factual allegations about Bean, J. Williams, Dreesen, Kuloloia, Fowler, Lt. Day, Lt. Rivera, or Sgt. Quinn that the Court overlooked or misconstrued. Graham argues that the Court overlooked allegations about Silber housing him next to violent offenders, closing transfers, allowing kites to be passed, and, after learning of this lawsuit, sending Graham to Ely State Prison ("ESP"). He also argues the Court overlooked allegations that Amicer purposely did not place a grievance in the box and is Silber's direct supervisor. First, there are no factual allegations that Silber allowed inmates to pass kites threatening Graham or that

Amicer did not place Graham's grievance in the box. And the Court did not overlook the few facts that Graham pled about Silber. Rather, it concluded those facts did not plausibly state that Silber knew of and disregarded an excessive risk to Graham's safety. For example, there are no factual allegations that Silber knew that inmate Bell had threatened or tried to harm Graham. Nor are there factual allegations from which it can reasonably be inferred that Silber knew that Graham could not be safely housed in any unit or yard at HDSP or ESP. And it is not reasonable to infer from the allegations that Silber—who Graham alleges is a caseworker—had authority himself to decide where to transfer Graham. Graham's motion to reconsider not allowing the failure-to-protect claim to proceed against certain defendants is denied.

### 5. Dismissing conspiracy claim

Graham argues that his conspiracy claim should proceed because shift-command and search-and-escort officers process mail, receive all emergency grievances, and escort inmates around the facility and thus work in tangent with Defendants to cover up staff misconduct and show Graham's grievances to other inmates. To state a claim for conspiracy to violate civil rights, the plaintiff must plead specific facts showing an agreement between the parties, the conspiracy's scope, what role each defendant played in the conspiracy, the motive each defendant had to participate, and when and how the conspiracy operated. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 937–38 (9th Cir. 2012). Graham does not identify any factual allegations that the Court overlooked or misconstrued when it dismissed this claim. The conspiracy claim fails because Graham does not plead specific facts establishing an agreement among individuals with a defined scope, purpose, participatory conduct, and motive. Instead, Graham merely concludes that "all Defendants" engaged in a swirl of vaguely defined conspiracies with differing purposes like retaliating against him for filing grievances and lawsuits; covering up staff misconduct like medical negligence and drug

trafficking; or getting him harmed or killed by other inmates because of his "sexual orientation," "charges," "troublemaker" behavior, or knowledge of staff misconduct. Graham's motion to reconsider dismissing the conspiracy claim is denied.

### 6. Claims about events that happened at ESP

Graham appears to argue that he should be permitted to join his claims against HDSP staff with his claims against ESP staff in a single action because they concern a series of occurrences as ESP staff acted in retaliation for grievances that Graham filed about events and conditions at HDSP. But there are no factual allegations in the SAC supporting Graham's theory that ESP staff acted or failed to act because he filed grievances or complained to the PREA hotline about prison conditions and medical indifference while he was housed at HDSP. The Court has already explained why Graham's various claims against different groups of defendants arising from different occurrences or series of occurrences cannot all be joined in a single action. (ECF Nos. 10 at 6–8; 25 at 33–34). Graham's motion to reconsider dismissing claims against ESP staff is denied.

### 7. Claims under the ADA

Graham argues that the Court erred dismissing his Americans with Disabilities Act ("ADA") claim. Graham's reliance on *Young v. Harris*, 509 F. Supp. 1111 (S.D.N.Y. 1981), to support the argument that he sufficiently pled a prima facie ADA claim is mistaken because that decision (1) is not binding on this Court and (2) considered whether the plaintiff's Eighth Amendment medical-indifference claim could survive summary judgment and does not even mention the ADA. The Court has already explained why allegations that HDSP staff failed to adequately treat Graham's seizure condition by ignoring his requests for emergency care and inconsistently providing his prescribed medication fall under the Eighth Amendment, not the ADA. (ECF No. 25 at 25). Graham's motion to reconsider dismissing his ADA claim is denied.

### B. Emergency Motion for Preliminary Injunction (ECF No. 38)

Graham seeks an order stopping retaliation, stopping mail hindering, releasing him from the "hole," transferring him from ESP, stopping inmates from tampering with his food, and getting him medical tests like bloodwork and an EKG. (ECF No. 38). This motion is denied because it fails to analyze why injunctive relief is merited under the applicable legal standards. *See* Nev. LR 7-2 (d) ("The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion."). Additionally the motion is denied because it is moot. Graham has since been transferred to HDSP and has not shown a reasonable expectation he will be transferred back to ESP. *See Preiser v. Newkirk*, 422 U.S. 395, 402–03 (1975) (holding that a claim for injunctive relief was moot after the prisoner had been returned to a medium security prison and would be eligible for parole within days of decision); *Johnson v. Moore*, 948 F.2d 517, 519–22 (9th Cir. 1991) (holding that a claim for injunctive relief related to a prison's policies is moot where a prisoner has been transferred to another facility and shows no reasonable expectation of return).

### C. Motion to Enforce Settlement (ECF No. 44)

Citing Federal Rules of Civil Procedure 57 and 78 and Nevada LR 78-1, Graham moves the Court to "enforce settlement" of this action, sanction the NDOC, and grant him "judgment on [the] pleadings[.]" (ECF No. 44). Graham argues that he is entitled to all this relief because the mediator was biased, the NDOC representative did not negotiate in good faith, and Graham is willing to settle this action in exchange for a transfer to a prison of his own choosing, and provision of electronics. (*Id.*)

To the extent Graham seeks a second mediation conference or to sanction the NDOC either because the mediator was biased or the NDOC didn't negotiate in good faith, his requests are denied. Graham argues that the NDOC acted in bad faith because its representative would not concede that Graham's allegations

6

1  were truthful and refused to satisfy Graham's settlement demand that he be
2  transferred to a different facility like Lovelock Correctional Center. But these
3  points show only an inability to settle, not that the NDOC acted in bad faith.
4  Graham argues that the mediator was biased because he made "rude comments
5  like 'Ely kills child molesters' and 'did the mouse trap catch the mouse.'" (*Id.* at
6  1). But Graham offers these statements without context or explanation and thus
7  fails to show that the mediator wasn't merely asking a logical follow-up question
8  about the mouse trap or repeating Graham's statements about ESP.

To the extent Graham seeks judgment on the pleadings, his request is denied. Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c), which authorizes a party to move for that relief "[a]fter the pleadings are closed—but early enough not to delay trial[.]" "Rule 12(c) is functionally identical' to Rule 12(b)(6)" and "the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (cleaned up) (collecting cases). Thus, "'[a] judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (quoting *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)). Graham does not explain why he is entitled to judgment on the pleading under the applicable standard, and his motion for this relief is premature because it was filed before the Court ordered service upon Defendants.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

7

## II. CONCLUSION

It is therefore ordered that the motion for reconsideration (ECF No. 27), emergency motion for preliminary injunction (ECF No. 38), and motion to enforce settlement (ECF No. 44) are denied.

DATED THIS 16th day of October, 2024.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE